# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NATIONAL SALVAGE & SERVICE CORPORATION, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) C.A. No. 2022-___-___ ) |
| SULLA VALLEY BIOGAS, SA DE C.V. and HONDURAN GREEN POWER CORPORATION, | ) **JURY TRIAL DEMANDED** ) ) ) ) |
| Defendants. | ) |

## COMPLAINT

Plaintiff, National Salvage & Service Corporation ("NSSC" or "Seller"), by and through its undersigned counsel, files this Complaint against Defendants, Sulla Valley Biogas, SA de C.V ("Sula Valley") and Honduran Green Power Corporation ("HGPC"),[1] alleges as follows:

## PARTIES AND JURISDICTION

1.  NSSC is a corporation organized and existing under the laws of Indiana, having its principal address at 6755 S. Old SR 37, Bloomington, Indiana 47401, United States.

2.  Sula Valley is a company organized and existing under the laws of Honduras with its principal place of business in Choloma, Republic of Honduras (hereinafter "Honduras").

3.  HGPC is a company organized and existing under the laws of Honduras, with its principal place of business in Choloma, Honduras.

---

[1] In the interest of convenience, both Defendants will be referred to as "Sula Valley" throughout this Complaint.

4. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332 because the parties have complete diversity of citizenship and the amount in controversy is in excess of $75,000.

5. This Court has personal jurisdiction over all parties because Defendants affirmatively have submitted to the jurisdiction of this Court in the Sale of Goods Agreement (the "Agreement"). Additionally, Agreement specifies that the U.S. District Court for the District of Delaware is the exclusive jurisdiction for all litigation between the parties. A true and accurate copy of the Agreement is attached hereto as **Exhibit 1**.

## FACTUAL ALLEGATIONS

6. NSSC is in the business of selling mulched railroad ties for fuel.

7. Sula Valley and HGPC (collectively, the "Buyer") are in the business of designing, manufacturing, and marketing clothing and active wear in Honduras.

8. Buyer also owns and operates a power generation facility in Honduras.

## THE AGREEMENT

9. On June 16, 2021, NSSC and Buyer, entered into the Agreement for NSSC to supply Buyer with 20,000 metric tons of railroad tie fuel (the "Goods").

10. The quantities and prices for the Goods are listed in the Agreement as Exhibit A.

11. The Agreement permitted Buyer to order all the Goods at once or overtime through issuing purchase orders.

12. Section 4(b) of the Agreement specifies, "Seller shall deliver the Goods to Port of Cortes, Honduras (the 'Delivery Point')."

## THE SHIPMENT

13. On June 23, 2021, Buyer issued a purchase order for 17,426.82 metric tons of Goods (the "Shipment").

14. Pursuant to the Agreement, NSSC engaged the M/V "Poland Pearl" V-G38073 (the "Poland Pearl") to transport the Goods from Morehead City, North Carolina to Port of Cortes, Honduras.

15. On September 3, 2021, the Poland Pearl set sail from Morehead City, North Carolina, with a projected arrival date of September 8.

16. On September 8, 2021, the Poland Pearl arrived in Port of Cortes, Honduras.

17. The Poland Pearl spent three days anchored in the bay at Port of Cortes waiting for an available berth.

18. At this time, the agreed-upon agent at the Port of Cortes, Holder Peters, informed Sula Valley that the shipment had arrived.

19. On September 11, 2021, the Poland Pearl docked at Port of Cortes and was prepared to discharge its Shipment into the terminal yard at Port of Cortes; however, Buyer was not at the Port of Cortes to receive the Shipment.

20. Buyer failed to arrive at the Port of Cortes to retrieve the Shipment until September 21, 2021. Buyer's failure was without sound cause, much less justification.

21. Section 4(d) of the Agreement states:

> If for any reason Buyer fails to accept delivery of any of the Goods on the date fixed pursuant to Seller's notice that the Goods have been delivered at the Delivery Point… (i) *risk of loss to the Goods shall pass to Buyer*; (ii) the Goods shall be deemed to have been delivered; and (iii) Seller at its option may store the Goods until Buyer picks them up, whereupon Buyer shall be liable for all related costs and expenses (including, without limitation, storage and insurance).

(Emphasis added).

22. Further, Sections 4(e) and 4(f) apportion responsibilities between the parties as follows:

(e) Seller shall:

    (i) arrange the contract of carriage; and

    (ii) bear the costs of delivery of the Goods to the Delivery Point.

(f) Buyer shall:

    (i) bear the unloading and terminal handling charges at the Delivery Point;

    (ii) bear the costs of carriage from the Delivery Point to the Buyer's premises; and

    (iii) be responsible for import clearance.

23. In addition, Section 4(a) of the Agreement specifically goes on to state: "Seller shall *not* be liable for *any* delays, loss or damage in transit." (Emphases added.)

24. Finally, Section 7 states:

> Title and Risk of Loss. Title passes to Buyer upon delivery of the Goods on board the ship at the Port of Morehead City, NC ("Port of Shipment"). Seller bears the risk of loss of or damage to the Goods until delivery of the Goods on board the ship at the Port of Shipment. *Buyer bears all risks of loss or damage to the Goods from the delivery of the Goods onto the ship at the Port of Shipment onward*.

(Emphasis added).

25. Due to Buyer's failure to retrieve this Shipment in a timely and appropriate manner, the Poland Pearl had to wait at Port of Cortes for an additional 10 days.

26. This delay was dispositive and its consequences damaging—for NSSC.

27. Due to this delay, IFCHOR North America, the Poland Pearl's owner, sent NSSC an invoice of $337,062.60 (the "Invoice") for demurrage and lay-time charges incurred while the Poland Pearl sat in Port of Cortes waiting for Buyer to retrieve the shipment. A true and accurate copy of the Invoice is attached as **Exhibit 2**.

28. Under Sections 4 and 7 of the Agreement, Buyer is responsible for reimbursing NSSC for all costs concerning the Invoice.

29. Further, Section 16—concerning indemnification—provides that Sula Valley is responsible for all costs, including attorneys' fees that NSSC has and will incur in bringing this action.

30. Section 16, in particular, states:

> Each Party (as "Indemnifying Party) shall indemnify, hold harmless, and defend the other Party… against any and all losses, damages, liabilities, deficiencies, claims, actions, judgments, settlements, interest, awards, penalties, fines, costs, or expenses of whatever kind, including reasonable attorneys' fees, that are incurred by Indemnified Party (collectively, "Losses"), relating to any claim of a third party or the Indemnified Party arising out of or occurring in connection with the Goods or the Indemnifying party's negligence, willful misconduct, or material breach of this Agreement.

31. On August 26, 2022, counsel for NSSC sent a letter to buyer requesting payment for the Invoice. A true and accurate copy of this letter is attached hereto as **Exhibit 3**.

32. Despite demand, Buyer has failed to pay all amounts owed under the Invoice as of the filing of this Complaint.

**FIRST CAUSE OF ACTION:**
**Breach of Contract**

33. Plaintiff repeats, re-alleges, and incorporates all the allegations contained in the preceding and subsequent paragraphs as though fully set forth herein.

34. The Agreement is a valid written contract between NSSC and Sula Valley.

35. NSSC substantially complied with all provisions of the Agreement.

36. Section 4 of the Agreement is makes clear that Sula Valley was obligated to retrieve the Shipment on the Port of Cortes in a timely and appropriate manner.

37. Sula Valley clearly failed to do so. In fact, it was 10 days late.

5

38. NSSC has been invoiced by IFCHOR North America in the amount of $337,062.60 due to Sula Valley's failure to meet its contractual obligations.

39. Under Sections 4, 7, and 16 of the Agreement, NSSC is obligated to pay the Invoice as well as all attorneys' fees and costs of bringing this action.

40. Sula Valley respectfully requests judgment against NSSC for all damages incurred due to Sula Valley's breach of the Agreement, including but not limited to $337,062.60 for the Invoice, interest, and attorneys' fees and costs of bringing this action.

## SECOND CAUSE OF ACTION:
### Failure to Accept Goods under the Uniform Commercial Code

41. Plaintiff repeats, re-alleges, and incorporates all the allegations contained in the preceding and subsequent paragraphs as though fully set forth herein.

42. As a transaction for the sale of goods, thee Shipment is governed by the Uniform Commercial Code (the "U.C.C.").

43. Under the U.C.C., NSSC, as seller, was obligated to transfer and deliver the Shipment and Sula Valley, as buyer, was obligated to accept and pay for the Shipment.

44. Under the U.C.C., Sula Valley was obligated to cooperate in receiving the Shipment.

45. Sula Valley failed to cooperate when it failed to retrieve the Shipment on September 11, 2022.

46. Sula Valley's failure to retrieve the Shipment on September 11, 2022 constitutes a failure to accept goods.

47. NSSC has been damaged by Sula Valley's breach of the U.C.C. in the amounts of $337,062.60 for the Invoice, interest, and attorneys' fees and costs of bringing this action.

## THIRD CAUSE OF ACTION:
### Breach of Implied Covenant of Good Faith and Fair Dealing

48. Plaintiff repeats, re-alleges, and incorporates all the allegations contained in the preceding and subsequent paragraphs as though fully set forth herein.

49. To state a claim for breach of the implied covenant of good faith and fair dealing, a party "must allege (i) a specific implied contractual obligation, (ii) a breach of that obligation by the defendant, and (iii) resulting damage to the plaintiff." *Kelly v. Blum*, 2010 WL 629850, at *13 (Del. Ch. Feb. 24, 2010).

50. To the extent the Agreement does not address Sula Valley's obligation to retrieve its shipment in a timely manner (it does), Sula Valley was obligated to act in good faith by retrieving the shipment on time and without causing NSSC to incur additional costs or expenses.

51. NSSC and Sula Valley had an implied yet well-established and entrenched understanding that Sula Valley would act in good faith and deal fairly with NSSC—and vice versa.

52. NSSC consistently has thus engaged with Sula Valley. But Sula Valley has not acted in good faith towards NSSC.

53. By delaying the retrieval of the Shipment by 10 days, Sula Valley has failed to honor its duty to act in good faith under these circumstances.

54. That failure by Sula Valley has damaged NSSC.

55. NSSC has been forced to retain counsel to address the conduct complained of herein and is therefore entitled to all those attorneys' fees and costs associated with bringing this action.

## FOURTH CAUSE OF ACTION:
### Unjust Enrichment

56. Plaintiff repeats, re-alleges, and incorporates all the allegations contained in the preceding and subsequent paragraphs as though fully set forth herein.

7

57. Under Delaware law, unjust enrichment is based on the "unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity or good conscience." *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010).

58. The elements of unjust enrichment are "the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience." *Schock v. Nash*, 732 A.2d 217, 232 (Del. 1999).

59. A plaintiff seeking to establish unjust enrichment must show: (1) an enrichment; (2) an impoverishment; (3) a relation between the enrichment and impoverishment; (4) the absence of justification; and (5) the absence of a remedy provided by law. *See Fitzgerald v. Cantor*, 1998 WL 326686, at *6 (Del. Ch. June 16, 1998).

60. Sula Valley was enriched by injuring NSSC because it got out of performing its timely duties.

61. The enrichment of Sula Valley caused NSSC's impoverishment.

62. NSSC's impoverishment by Sula Valley was without justification.

63. Sula Valley impoverished NSSC by suddenly, unexpectedly, and inexplicably leaving the latter high and dry by failing to collect the Goods at the Port of Cortes in a timely and appropriate manner—and saddled NSSC with a big invoice for no fault of NSSC's own.

64. If the other causes of action set forth in this Complaint do not succeed, no remedies other than unjust enrichment might exist at law.

65. NSSC has been forced to retain counsel to address the conduct complained of herein and is therefore entitled to all those attorneys' fees and costs associated with bringing this action.

## FIFTH CAUSE OF ACTION:
### Quantum Meruit

66. Plaintiff repeats, re-alleges, and incorporates all the allegations contained in the preceding and subsequent paragraphs as though fully set forth herein.

67. Under Delaware law, *quantum meruit* "allows a party to recover the reasonable value of his or her services if: (i) the party performed the services with the expectation that the recipient would pay for them; and (ii) the recipient should have known that the party expected to be paid." *Petrosky v. Peterson*, 859 A.2d 77, 79 (Del. 2004).

68. NSSC delivered the Shipment to Port of Cortes based on the expectation that Sula Valley would retrieve it in a timely manner. And NSSC performed its services with the full expectation that Sula Valley would pay for, and recompense NSSC for, those services. *See* Article 4, Agreement.

69. Sula Valley has failed to pay for those services. And it has left NSSC unrecompensed.

70. Sula Valley's dilatory and other tactics have injured NSSC.

71. Sula Valley had reason to know, and did know, that NSSC expected to be paid.

72. Delaware jurisprudence compels *quantum meruit* recovery under these circumstances because there is no other source of state law complicating this analysis.

73. NSSC has been forced to retain counsel to address the conduct complained of herein and is therefore entitled to all those attorneys' fees and costs associated with bringing this action.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, National Salvage & Service Corporation, respectfully requests judgment in its favor and against Defendants Sulla Valley Biogas, SA de C.V and Honduran Green Power Corporation for:

A. Actual damages of $337,062.60;

B. Pre-judgment and post-judgement interest at the highest rates permitted by Delaware law;

C. Reasonable attorneys' fees;

D. An award of costs; and

E. All other just and proper relief.

|  |  |
|---|---|
| OF COUNSEL:<br><br>Riddhi Dasgupta, *Pro Hac Forthcoming*<br>TAFT STETTINIUS & HOLLISTER LLP<br>200 Massachusetts Ave NW, Suite 500<br>Washington, DC  20001-5875<br>Tel. (202) 664-1564<br>sdasgupta@taftlaw.com<br><br>Adam Zacher, *Pro Hac Forthcoming*<br>TAFT STETTINIUS & HOLLISTER LLP<br>One Indiana Square, Suite 3500<br>Indianapolis, IN  46204<br>Tel. (317) 713-3500<br>azacher@taftlaw.com | */s/ John M. Seaman*<br>John M. Seaman (#3868)<br>Christopher Fitzpatrick Cannataro (#6621)<br>ABRAMS & BAYLISS LLP<br>20 Montchanin Road, Suite 200<br>Wilmington, DE  19807<br>Tel. (302) 778-1000<br>seaman@abramsbayliss.com<br>cannataro@abramsbayliss.com<br><br>*Attorneys for Plaintiff National Salvage & Service Corporation* |

Dated:  October 28, 2022