# EXHIBIT 3



**Sohan Dasgupta**
Member
202.292.4149 (t)
202.292.4151 (f)
sdasguptca@fbtlaw.com

August 26, 2022

Sula Valley Biogas, SA de C.V.
Attention: President
Zona Libre Zip Choloma, Carretera La Jutosa.
Choloma, Cortes
Honduras
Honduran Green Power Corporation

Attention: President Jesús Juan Canahuati
Zola Zip Choloma II, KM 1.5
Carretera La Jutosa
Choloma, Cortes, 21112
Honduras

Re: **Sale of Goods Agreement with National Salvage & Service Corporation
Demand for Payment – Demurrage Charges**

Dear Mr. Canahuati:

This firm represents National Salvage & Service Corporation ("**NSSC**") in connection with demurrage and laytime charges incurred during the unloading and terminal handling of mulched railroad ties (the "**Goods**") that NSSC sold to Sula Valley Biogas, SA de C.V. ("**Sula Valley**") and Honduran Green Power Corporation ("**HGPC**"). A copy of the Sale of Goods Agreement between NSSC, Sula Valley, and HGPC dated June 16, 2021, is enclosed with this letter. NSSC received an invoice from its shipping broker, IFCHOR North America in the amount of USD $337,062.60 (the "**Invoice**") for demurrage and laytime charges incurred during unloading cargo at the Port of Cortes in Honduras. For the reasons explained in this letter, Sula Valley and HGPC are responsible for paying NSSC the sum of USD $337,062.60, and NSSC demands payment from you no later than September 26, 2022.

The Agreement expressly states in Paragraph 4(a) that NSSC is not liable for any delays, loss or damage in transit. Additionally, it apportions the delivery charges for which NSSC is responsible and the delivery charges for which Sula Valley and HGPC are responsible. This makes Sula Valley and HGPC responsible for all charges after the Goods are delivered to the Port of

August 26, 2022
Page 2

Cortes, Honduras (the "**Delivery Point**"). More specifically, Paragraph 4 apportions responsibilities between the parties as follows:

> (e) Seller shall:
>
> > (i) be responsible for export clearance;
> >
> > (ii) arrange the contract of carriage; and
> >
> > (iii) bear the costs of delivery of the Goods to the Delivery Point.
>
> (f) Buyer shall:
>
> > (i) bear the unloading and terminal handling charges at the Delivery Point;
> >
> > (ii) bear the costs of carriage from the Delivery Point to the Buyer's premises; and
> >
> > (iii) be responsible for import clearance.

Subsections (e) and (f) thus make clear that NSSC's responsibility for delivery charges ends when the Goods arrive at the Delivery Point, and that Sula Valley and HGPC bear responsibility for all charges once the Goods arrive at the Delivery Point.

The plain language of the Agreement is reinforced by the parties' agreement to incorporate Incoterms® 2020 into their Agreement. Section 4(b) of the Agreement states that "All Prices are Cost & Freight (CFR), Delivery Point, Incoterms® 2020." "Incoterms," it is well-settled, "are internationally accepted terms of commerce defining the roles and responsibilities of seller and buyer, delivery and risk." *W. Exp. Servs., Inc. v. Webtrans Logistics, Inc.*, No. CV 19-04279-JEM, 2022 WL 1601384, at *3 (C.D. Cal. Apr. 11, 2022). CFR is used for sea and inland waterway transport of non-containerized cargo. *See* INCOTERMS® 2020 Rules: Overview, Practical Law Practice Note w-026-8608. Under Incoterms® 2020, CFR, the seller bears the costs of carriage necessary to transport the goods to the agreed point at the named destination, while the buyer bears the unloading and terminal handling charges at the port of destination and the costs of carriage from the port of destination to the buyer's premises or warehouse. *Id.*

NSSC arranged for and paid the freight costs to deliver the Goods to the Port of Cortes. The Goods arrived at the Delivery Point. While there were delays that occurred during loading, the demurrage charges for delays at the point of origin were invoiced separately and already paid by NSSC. Accordingly, the charges must be paid by Sula Valley and HGPC under the terms of the Agreement and the Incoterms® 2020.

August 26, 2022
Page 3

    A third source of Sula Valley's and HGPC's obligation to pay the charges on the Invoice is the indemnity clause included as paragraph 16 of the Agreement. In the Agreement, Sula Valley and HGPC agreed to defend and indemnity NSSC from third-party claims.

> <u>Indemnification</u>. Each Party (as "**Indemnifying Party**") shall indemnify, hold harmless, and defend the other Party and its successors and permitted assigns (collectively, "**Indemnified Party**") against any and all losses, damages, liabilities, deficiencies, claims, actions, judgments, settlements, interest, awards, penalties, fines, costs, or expenses of whatever kind, including reasonable attorneys' fees, that are incurred by Indemnified Party (collectively, "**Losses**"), relating to any claim of a third party or the Indemnified Party arising out of or occurring in connection with the Goods or the Indemnifying Party's negligence, willful misconduct, or material breach of this Agreement.

    SMT (the ship owner) and IFCHOR (the broker) have made a claim for payment from NSSC. Sula Valley and HGPC are required to defend NSSC from those claims, and indemnify NSSC for any costs, expenses, settlements, judgments, and other damages that it incurs because of the claims. These include NSSC's attorney fees. The indemnification clause also obligates Sula Valley and HGPC to pay NSSC's attorney fees if it is compelled to pursue a claim against them for breach of the Sales of Goods Agreement.

    To avoid increasing the liability of Sula Valley and HGPC with the addition of attorneys' fees, NSSC hereby demand that Sula Valley and HGPC pay it USD $337,062.60 no later than September 26, 2022. I look forward to your prompt response.

                                        Sincerely,

                                        Frost Brown Todd LLC

                                        Sohan Dasgupta

SD/dc
Enclosures

0145422.0760326   4869-5222-1999v1